**Opinion filed May 12, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00161-CR
_____

## EX PARTE DAKOTA DOUGLAS DIXON

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR51721**

## M E M O R A N D U M   O P I N I O N

On November 1, 2018, Dakota Douglas Dixon (Appellant) pleaded guilty to intoxication assault, a third-degree felony. *See* TEX. PENAL CODE ANN. § 49.07(c) (West 2011). The trial court assessed Appellant's punishment at confinement for ten years but, pursuant to a plea agreement between Appellant and the State, suspended his punishment and placed him on community supervision for eight years. On April 1, 2020, Appellant applied for a writ of habeas corpus based on the claim that new evidence existed. Appellant's writ application came before the same trial judge that had accepted Appellant's guilty plea and had placed him on community supervision nearly two years earlier. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072

(West Supp. 2021). The trial court denied his application without an evidentiary hearing.

In six issues, Appellant contends that the trial court erred in its factual findings and abused its discretion by denying his requested relief without an evidentiary hearing. He further asserts that, other than remanding for an evidentiary hearing, this court's only alternative is to vacate Appellant's conviction on due process grounds. We affirm.

*Background*

We note at the outset that Appellant has not provided a reporter's record from the hearing wherein he pleaded guilty. Accordingly, the factual matters stated in this opinion regarding the underlying offense are for the most part those that were conveyed to the trial court by affidavits and documents attached to those affidavits.

Just before 3:00 a.m., on February 14, 2018, Midland Police Officer Rowdy Warren arrived at the scene of a vehicular accident on 11710 Tower Road, in Midland County, Texas. Officer Warren observed "heavy front-end damage" to a 2014 Chevrolet Silverado pickup driven by Appellant and to an 18-wheeler reportedly driven by Adrian Esparza. Officer Warren reported that Fernando Camacho was in the passenger seat of the 18-wheeler when the collision occurred. Appellant admitted that he had been drinking, and a portable breath test revealed the presence of alcohol. At that point, Officer Warren placed Appellant under arrest for DWI. *See* PENAL § 49.04(a).

After Appellant refused to voluntarily submit to a blood draw, Officer Warren obtained a search warrant for Appellant's blood, and Appellant was taken to Midland Memorial Hospital where a sample of his blood was collected. The accident having occurred at approximately 2:44 a.m., and Appellant's blood not being drawn until

6:45 a.m.—some four hours later,[1] lab results ultimately showed that the sample extracted from Appellant contained 0.081 grams of alcohol per 100 milliliters of blood (with a 99.7% confidence level in that result). *See* PENAL § 49.01(2) (defining "intoxicated" as, *inter alia*, "having an alcohol concentration of 0.08 or more."). While at Midland Memorial, the staff also informed Officer Warren that Camacho had suffered "extensive trauma to his lumbar spine" as a result of the collision. Officer Warren then transported Appellant to jail, where he was booked for intoxication assault. *See id.* § 49.07. Appellant later pleaded guilty to the indicted charge of intoxication assault and he was placed on community supervision for a term of eight years.

Appellant subsequently applied for a writ of habeas corpus on the grounds that newly discovered evidence reveals that he did not actually cause the accident that resulted in Camacho's serious bodily injuries. Appellant argued that, in light of this new evidence, (1) his conviction and sentence violated due process because, at most, he could only be guilty of the lesser included offense of DWI; (2) his plea counsel rendered ineffective assistance by failing to investigate who actually caused the accident, failing to tell Appellant that there was some question as to who caused the accident, and failing to advise him that he could hire an expert to investigate the cause of the accident; and (3) his plea was involuntary because he entered into it based on the misunderstanding that he caused the accident that resulted in Camacho's injuries. In his prayer, Appellant requested that the trial court conduct an evidentiary hearing "to resolve any disputed material fact questions."

Appellant's "new evidence" consisted of a collision analysis conducted by Judd Joy, a crash reconstructionist for M&M Security Services, Inc. in Plano, Texas.

---

[1]During the four hours that elapsed before Appellant's blood was drawn, his body would have metabolized the alcohol content at a scientifically predictable rate. *See Cole v. State*, 490 S.W.3d 918, 926–27 (Tex. Crim. App. 2016) (citing *Missouri v. McNeely*, 569 U.S. 141, 152–53 (2013)). However, the record before us does not contain any extrapolation evidence as to what Appellant's blood alcohol content was at the time of the accident.

Joy has a B.A. in criminal justice from Midwestern State University in Wichita Falls, Texas. In his report, Joy states that he did not have access to the vehicles, the crash data from the vehicles, any diagrams or forensic maps of the crash scene, or any independent witness statements. Rather, Joy's opinions were based on "a few photographs of the crash scene," "body camera video provided by the Midland Police Department," "Google earth images," Officer Warren's crash report and offense report, and Camacho's medical records. Joy ultimately concluded that "the crash report prepared by the Midland Police Department is inaccurate" and that the *other* driver "failed to drive in a single lane and caused this crash to occur."

With respect to his ineffective assistance and involuntary plea claims, Appellant alleged in his writ application that, prior to pleading guilty, his plea counsel "never advised [him] that there was a question about who caused the vehicle accident" and "never discussed hiring a collision-reconstruction expert to investigate the matter." Appellant averred that, "had [he] known [he] did not cause the accident, [he] never would have pleaded guilty." Based on these allegations, the trial court ordered Appellant's plea counsel to submit an affidavit responding to the questions regarding his assistance.

Plea counsel promptly submitted an affidavit that provided detailed responses to each question. In his affidavit, plea counsel stated that he personally investigated the case and hired a private investigator to do so as well. He stated that he and his investigator went to the crash scene, reviewed all discovery, interviewed witnesses, and consulted with Appellant's defense attorney in the parallel civil case[2] filed against Appellant arising out of the same occurrence. He stated that Appellant's civil defense attorney hired an accident reconstruction expert and that the results were "inconclusive" and "not of assistance to [Appellant's] case." He explained that

---

[2] *Fernando Camacho et al. v. P&W Sales Inc. and Dakota Dixon*, No. CV54365, 238th District Court, Midland County, Texas.

"[t]here was some question as to who caused the accident" but that "the overwhelming evidence available did not exonerate [Appellant] as a cause of the accident." Finally, plea counsel stated that he reviewed Camacho's medical records and discovered a nurse's note suggesting that Camacho may have been driving the other vehicle while texting; however, the nurse was equivocal as to whether Camacho actually made the statement. Plea counsel attested that he relayed all of this information to Appellant before he chose to plead guilty.

Appellant filed a responsive affidavit that disputed several statements in plea counsel's affidavit. Specifically, Appellant stated (1) that he did not know that there was any question as to who caused the accident, (2) that he was unaware of the results of any accident reconstruction analysis conducted as part of his civil case, and (3) that plea counsel never told him about the note in Camacho's medical records suggesting that Camacho may have been driving the other vehicle and may have caused the accident when he lost control while texting. Appellant also filed a motion requesting that the court hold an evidentiary hearing where he and plea counsel could testify and be cross-examined so the trial court might better assess their credibility and determine whose account of events was accurate.

Without conducting an evidentiary hearing, the trial court found that plea counsel fully investigated the relevant facts and apprised Appellant of all relevant information—including the results of the accident reconstruction expert in the parallel civil case and the note in Camacho's medical records suggesting that he was actually the driver of the other vehicle and was texting while driving. Accordingly, the trial court denied Appellant's application.

In his first two issues on appeal, regarding his claims of ineffective assistance and involuntary plea, Appellant challenges the trial court's findings of fact that plea counsel told Appellant about the note in Camacho's medical records and the option of hiring an expert to investigate the cause of the accident. In his third through fifth issues, Appellant argues that the trial court abused its discretion by denying

Appellant's application without first conducting an evidentiary hearing. In his sixth issue, Appellant argues that if we do not remand this cause for an evidentiary hearing, then we must vacate Appellant's conviction for intoxication assault because the record conclusively demonstrates that he is only guilty of the lesser misdemeanor offense of DWI.

*Discussion*

I. *Plea counsel told Appellant about the note in Camacho's medical records and discussed the hiring of an expert.*

A. *Standard of review and applicable law*

When reviewing a trial court's ruling on a habeas claim, we "review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007)). "[I]n Article 11.072 cases, the trial court is the sole finder of fact, and the reviewing court acts only as an appellate court." *Ex parte Sanchez*, 625 S.W.3d 139, 144 (Tex. Crim. App. 2021). Thus, we "afford almost total deference to a trial court's determination of the historical facts that the record supports[,] especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also "defer to a trial judge's factual findings that are supported by the record even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories." *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *see also Ex parte Sanchez*, 625 S.W.3d at 144 (holding that "[f]indings of historical fact made at the trial level are still given deference on appeal even when the findings are based solely on affidavits"); *Manzi v. State*, 88 S.W.3d 240, 244 (Tex. Crim. App. 2002) (holding that deferential standard of review applies to "the trial court's resolution of the historical facts from conflicting affidavits").

"An applicant seeking habeas corpus relief on the basis of an involuntary guilty plea must prove his claim by a preponderance of the evidence." *Kniatt*, 206 S.W.3d at 664 (citing *Ex parte Morrow*, 952 S.W.2d 530, 535 (Tex. Crim. App. 1997)). "It is well established that a guilty plea must be entered knowingly and voluntarily." *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). Thus, a guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Id.* "Sufficient awareness of the factual circumstances surrounding a plea, as opposed to complete knowledge, is required when a plea is entered." *Ex parte Broussard*, 517 S.W.3d 814, 817 (Tex. Crim. App. 2017).

"A defendant is not entitled to withdraw his [guilty] plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* (citing *Brady v. United States*, 397 U.S. 742, 757 (1970)). Accordingly, "[w]hen a defendant pleads guilty knowing that a particular fact is unknown or at least uncertain, he cannot later invalidate his plea if he misapprehended that fact or the State's ability to prove it." *Id.* "[E]ven if the defendant is less-well informed, as long as he has sufficient awareness of his circumstances—including an awareness that some facts simply remain unknown to him or are undetermined as of the time of his plea—his potentially unwise plea is still a voluntarily one." *Id.* (quoting *Ex parte Palmberg*, 491 S.W.3d 804, 809 (Tex. Crim. App. 2016)). As such, "if a known unknown is discovered to be different than the defendant estimated, it does not necessarily entitle him to relief from his agreement with the State because his estimation turned out to be wrong." *Id.* at 818. After all, invalidating a guilty plea based on later-obtained evidence, "which was known to be unknown at the time of the plea, would contradict *Brady* and trivialize the importance and solemnity of sworn statements, judicial confessions, and testimony generally." *Id.* at 819–20.

When the basis of a habeas applicant's involuntary plea argument is that they received ineffective assistance of counsel, "'the voluntariness of the plea depends on (1) whether counsel's advice was within the wide range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty' to the charged offense and would have insisted on going to trial." *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010) (quoting *Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999)).  Plea counsel's assistance falls outside of the wide range of competence demanded by the first prong when counsel's advice is not "informed by an adequate investigation of the facts of the case . . . [unless] based on a reasonable decision that investigation was unnecessary." *Id.*  In order to demonstrate prejudice under the second prong, a habeas applicant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Ex parte Torres*, 483 S.W.3d 35, 48 (Tex. Crim. App. 2016) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

### B. *Analysis*

As previously noted, Appellant has not provided, and we do not have the benefit of, a reporter's record from his plea hearing.  Thus, the record is devoid of the admonishments given by the trial court at the plea hearing or Appellant's responses thereto.  Further, Appellant has not submitted a reporter's record from the hearing on the motion for continuance.  Thus, this case, as presented to us, is a battle between competing affidavits.

After a careful review of the record, we hold that the trial court did not abuse its discretion in making any of its findings of fact as to Appellant's claims of ineffective assistance and involuntary plea.  Before Appellant pleaded guilty, Appellant's plea counsel averred that he sought and received a continuance from the trial court in order to review the results of a report being prepared by an accident reconstruction expert who was hired by Appellant's trial counsel in the companion

civil case. Plea counsel explained this in his motion for the continuance and did so again in his affidavit regarding Appellant's habeas claim of ineffective assistance of counsel. Plea counsel averred that Appellant was present in the courtroom when plea counsel moved for the continuance in order to review the pending results from the crash reconstruction analysis. The habeas judge in this case was also the trial judge to whom the motion for continuance was made. Thus, the trial judge would have known that Appellant was present when the continuance motion was made and that an accident reconstruction analysis had been prepared before Appellant pleaded guilty. This is in direct contradiction to what Appellant asserted in his habeas application and what he now argues on appeal. *See* CRIM. PROC. art. 11.072, § 6(b) ("In making its determination, the [trial] court may order affidavits, depositions, interrogatories, or a hearing, *and may rely on the court's personal recollection*." (emphasis added)). Under the circumstances, we must defer to the trial court's findings that, prior to pleading guilty, Appellant knew he could hire an accident reconstruction expert to investigate the cause of the crash and that such an expert had already been hired to do so in the companion civil case.

The trial court, in his role as the habeas judge, could rely on his personal recollection in determining that Appellant's plea counsel's version of events was truthful, namely, that Appellant knew he could hire an expert to investigate the cause of the crash and knew the results in his first accident reconstruction expert's report. In this case, the habeas judge could determine that the affidavit of Appellant's plea counsel was more credible than Appellant's affidavit. Because he presided over the hearing on Appellant's motion for continuance, the habeas judge, based on his personal recollection of that hearing, was in a position to determine that Appellant was not truthful when he denied that he knew he could have hired an accident reconstruction expert or that plea counsel ever told him about the results in his first accident reconstruction expert's report. The trial court's finding is also supported by the record, which contains the motion for a continuance in which plea counsel

explained that he and Appellant were awaiting the receipt of potentially exculpatory evidence from an expert. *See Guzman*, 955 S.W.2d at 89 (giving "almost total deference to a trial court's determination of the historical facts that the record supports[,] especially when the trial court's fact findings are based on an evaluation of credibility and demeanor"). Accordingly, the trial court did not abuse its discretion in finding Appellant's affidavit less credible than plea counsel's. *See id.* Further, the record also supports the trial court's finding that plea counsel told Appellant about the nurse's note which suggested that Camacho may have been driving the other vehicle and caused the accident.

Assuming, *arguendo*, that Appellant never saw or was informed of the results of the accident reconstruction report from the civil case and that Joy's subsequent report was more accurate than the report prepared by the other expert, it is of no consequence because, "[w]hen a defendant pleads guilty knowing that a particular fact is unknown or at least uncertain, he cannot later invalidate his plea if he misapprehended that fact or the State's ability to prove it." *Ex Parte Broussard*, 517 S.W.3d at 817. Thus, we cannot conclude that the trial court abused its discretion when it determined that Appellant's guilty plea was not involuntary. We overrule Appellant's second issue on appeal.

Moreover, because the trial court acted within its discretion in giving the weight it deemed to be appropriate to the account of the events articulated in plea counsel's affidavit, we also cannot say that Appellant's plea counsel provided ineffective assistance. The trial court found that plea counsel provided advice that was "based on a thorough investigation of the facts" and that he made Appellant aware "of all the evidence, including the accident reconstruction expert opinion and the possible statements in the medical records, and all possible defense strategies." These findings are based on assertions in plea counsel's affidavit. The trial court was in a position to determine that plea counsel's affidavit was more credible based on perceived falsehoods in Appellant's affidavit, the judge's personal recollection

of the events that transpired during the hearing on Appellant's motion for a continuance, and the contents of the written motion for continuance. Therefore, we cannot say that the trial court abused its discretion in affording more credence to the facts contained in plea counsel's affidavit. As reflected in the trial court's findings of fact and conclusions of law, plea counsel's representation and advice was within the wide range of competence demanded of attorneys in criminal cases and was not deficient. Accordingly, we cannot find that Appellant received ineffective assistance. We overrule Appellant's first issue on appeal.

II. *The trial court did not err in denying Appellant's application without first conducting an evidentiary hearing.*

A. *Standard of review and applicable law*

A habeas court determining whether an applicant is entitled to relief under Article 11.072 *may* order affidavits, depositions, interrogatories, or a hearing, but it is not required to do so. *See* CRIM. PROC. art. 11.072, § 6(b); *see also Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.) (interpreting the Code of Criminal Procedure and holding that there is "nothing in article 11.072 *requiring* the trial court to . . . conduct a hearing on an application for habeas corpus before rendering its decision on the relief sought"). Given that habeas courts are entitled to use discretion in deciding whether to grant or deny an applicant's request for an evidentiary hearing, we review such decisions for an abuse of discretion. *See Ex parte Salazar*, 510 S.W.3d 619, 626–27 (Tex. App.—El Paso 2016, pet. ref'd).

"[A] trial court is not required to conduct an evidentiary hearing to resolve controverted material fact issues in a postconviction habeas proceeding." *Ex parte Gonzalez*, 323 S.W.3d 557, 558–59 (Tex. App.—Waco 2010, pet. ref'd). Nor does a habeas court abuse its discretion by denying an applicant's request for an evidentiary hearing when the applicant alleges ineffective assistance of counsel or challenges the voluntariness of his guilty plea. *See, e.g., Ex parte Salazar*, 510 S.W.3d at 626; *Ex parte Franklin*, 310 S.W.3d 918, 922–23 (Tex. App.—Beaumont

2010, no pet.). However, an applicant *is* entitled to an evidentiary hearing when he "make[s] a claim that, if true, establishes affirmative evidence of his innocence." *Ex parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006); *see also Ex parte Franklin*, 310 S.W.3d at 922 (explaining that the habeas court "is required to hold a hearing under circumstances where newly discovered evidence, if believed, establishes the defendant's innocence"). Nevertheless, even in these "actual innocence" cases, "no evidentiary hearing is required by article 11.072 to resolve controverted facts if the trial judge before whom the habeas application is pending also presided over the applicant's trial." *Ex parte Gonzalez*, 323 S.W.3d at 561.

### B. *Analysis*

In his third and fourth issues, Appellant argues that the trial court abused its discretion in denying his request for an evidentiary hearing because—with respect to his ineffective assistance and involuntary plea claims—such hearing was necessary to determine whether Appellant's affidavit or plea counsel's affidavit was truthful and credible. We disagree. As we have explained, the trial court did not abuse its discretion in finding that plea counsel's affidavit was credible and Appellant's was not. This finding is further consistent with the trial court's ability to recall events that occurred at the hearing on Appellant's motion for a continuance. *See* CRIM. PROC. art. 11.072, § 6(b). That motion for continuance is before us and corroborates statements in plea counsel's affidavit. *See Guzman*, 955 S.W.2d at 89 (instructing appellate courts to "afford almost total deference to a trial court's determination of the historical facts that the record supports"). As such, the trial court was not required to conduct an evidentiary hearing in order to resolve disputes of fact arising out of inconsistencies between Appellant's affidavit and that of his plea counsel, and its decision not to conduct such a hearing was not an abuse of discretion. Accordingly, we overrule Appellant's third and fourth issues.

In his fifth issue, Appellant requests that we expand the holding of our sister court in *Ex parte Franklin*, 310 S.W.3d 918. In *Ex parte Franklin*, the Beaumont

Court of Appeals held that, unless impracticable, "the trial judge is required to hold a hearing under circumstances where newly discovered evidence, if believed, establishes the defendant's *innocence*." 310 S.W.3d at 922–23 (emphasis added). Appellant argues that we should expand this rule beyond cases of actual innocence and apply it to instances where an applicant's conviction violates due process because it is claimed that they are only guilty of a lesser included offense of the crime to which they pleaded guilty. *See State v. Wilson*, 324 S.W.3d 595 (Tex. Crim. App. 2010) (affirming trial court's grant of habeas relief to applicant who pleaded guilty to a felony but was only guilty of a misdemeanor on due process grounds). Here, Appellant argues that Joy's report conclusively establishes that Appellant did not cause the accident and he, therefore, is only guilty of the lesser included misdemeanor offense of DWI, rather than the third-degree felony of intoxication assault to which he pleaded guilty. *See* PENAL §§ 49.04(b), 49.07(c).

The trial court found that Joy's accident reconstruction report was neither new evidence nor conclusive proof that Appellant did not cause the accident. Appellant argues that we should dispense with the *Ex parte Franklin* new evidence requirement because "a *Wilson* claim, unlike an actual-innocence claim, does not need to be based on evidence that was previously unavailable." If we were to adopt Appellant's position, the rule in *Ex parte Franklin* would be meaningless. After all, *Ex parte Franklin* is limited to (1) actual innocence claims (2) supported by new evidence. We would merely be left with the result that Appellant conveniently desires and the pretext that it follows logically from *Ex parte Franklin*. Moreover, the result would be that innocent applicants must do more to receive an evidentiary hearing than applicants who are guilty, albeit of only lesser-included offenses. This is hardly a just result. For these reasons, and in the absence of any impetus in the law to do otherwise, we decline Appellant's invitation to expand the holding of *Ex parte Franklin* to automatically entitle habeas applicants who assert *Wilson* claims to an evidentiary hearing. Therefore, we hold that the trial court did not abuse its

discretion by denying Appellant's request for an evidentiary hearing, and we overrule Appellant's fifth issue on appeal.

III. *Vacating Appellant's conviction is not an appropriate remedy here.*

A. *Standard of review and applicable law*

"[P]ost-conviction habeas corpus is available when a felony conviction was rendered on a guilty plea when in fact the offense was a misdemeanor." *Wilson*, 324 S.W.3d at 599 (quoting *Ex parte Sparks*, 206 S.W.3d 680, 680 (Tex. Crim. App. 2006)). "[I]f an applicant can demonstrate that he is 'guilty only of' a lesser-included offense or that he is factually 'ineligible for' a particular sentence, he might still be allowed to withdraw his plea of guilty" "because due process simply will not tolerate punishing as a felon a person who, by every objective measure of the law and facts, committed only a misdemeanor." *Ex parte Saucedo*, 576 S.W.3d 712, 720 (Tex. Crim. App. 2019) (Keasler, J., concurring) (citing *Wilson*, 324 S.W.3d at 598–99; *Ex parte Sparks*, 206 S.W.3d at 683).

"[A] claim for post-conviction relief under *Wilson* should function much like a claim of actual innocence: [t]he applicant must show, by clear and convincing evidence, that no reasonable juror would have convicted him of the greater offense, or made findings consistent with the heightened sentence, in light of the new evidence." *Id.* (citing *Ex pare Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996) (defining the standard of review required in determining whether to grant relief to habeas applicants asserting claims of actual innocence based on new evidence)). We review de novo the legal question of whether an applicant's "new evidence, viewed in the light most favorable to the habeas court's factual findings and credibility determinations, actually prove[s], by clear and convincing evidence, that a jury would acquit him." *Ex parte Mayhugh*, 512 S.W.3d 285, 296 (Tex. Crim. App. 2016). "To be eligible for actual innocence relief, an applicant must 'unquestionably establish' his factual innocence through newly discovered

evidence." *Ex parte Fournier*, 473 S.W.3d 789, 792 (Tex. Crim. App. 2015) (citing *Ex parte Elizondo*, 947 S.W.2d at 209).

B. *Analysis*

After reviewing Joy's expert report in the light most favorable to the trial court's factual findings and credibility determinations, we cannot say that the report unquestionably establishes that no reasonable juror would have convicted Appellant of intoxication assault. *See id.* The trial court found that plea counsel was credible and accepted the version of events articulated in his affidavit. In addition to other facts, plea counsel explained that the DPS report and witnesses on the scene supported the conclusion that Appellant was a cause of the accident which contradicts the proposition that Camacho was the driver of the other vehicle. Plea counsel clarified that he was unable to find any evidence confirming that the note in Camacho's medical records was actually based on anything he said. Plea counsel further averred that witness statements and Appellant's own admission suggested that he may have been passed out behind the wheel at the time of the collision. Finally, plea counsel noted that, based on his twenty-five years of experience as a criminal defense attorney, Midland juries are not receptive to strategies that shift responsibility to victims who were seriously injured when the evidence suggests that the defendant caused the injury while drinking and driving. The question before us is whether the second expert report—based on access to very limited data and conducted a year and a half after Appellant pleaded guilty—if presented, would have made a difference, such that no reasonable juror would have convicted Appellant of intoxication assault. We cannot say that it would.

Joy's report does not constitute clear and convincing evidence that Appellant did not cause the accident. In his report, Joy states that he did not have access to the vehicles or any crash data that could have been downloaded from the vehicles. He further states that he had no access to independent witness statements. Viewed in the light most favorable to the trial court's factual findings, the independent witness

statements that were unavailable to Joy were inculpatory of Appellant, not exculpatory. Joy states that he also did not have any diagram or forensic map of the crash scene that would allow him "to accurately measure the crash evidence." Rather, Joy's opinion is based on a few night-time photographs of Appellant's vehicle, body-camera footage from responding officers, a Google Earth image, Officer Warren's deposition, and Camacho's medical records. Based on this limited information, Joy concluded from his review of the photographs that Appellant's vehicle sustained front-end damage mostly on the passenger side. Based on Officer Warren's deposition, Joy concluded that Camacho and Esparza's vehicle was struck just behind its front right wheel. Joy notes that, in the body-camera footage, Esparza explains that when "he noticed [Appellant] enter into his lane of traffic . . . he took evasive action to the left." Joy concedes that evasive action by Esparza and Camacho to their left is consistent "with the area[s] of impact." But Joy disagrees with Esparza's statement to responding officers that Appellant corrected to his right. Given the limited data upon which Joy's report is based and his concession that Esparza's account of the events is consistent with the areas of impact, Joy's report can hardly be said to "unquestionably establish" that Appellant did not cause the accident. *Id.*

In short, Joy's expert report was based on limited information that even he concedes inhibited his ability to "accurately measure the crash evidence." He also concedes that the points of impact between the two vehicles are consistent with the explanation that Appellant caused the accident by drifting into Esparza and Camacho's lane of traffic. Joy may ultimately have concluded that he believes Appellant did not cause the accident and that the other vehicle drifted into Appellant's lane of traffic, but his report is inconclusive at best and by no means "unquestionably establishes [Appellant's] factual innocence." *Id.* A reasonable juror could convict Appellant of intoxication assault based on all the evidence in the record, even with the addition of Joy's expert report. As such, the record does not,

as Appellant contends, "support[] only that [Appellant] is guilty of a lesser included offense" of DWI.  We overrule Appellant's sixth issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS
JUSTICE


May 12, 2022

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.